IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SHANE GRESSEL,

                    Plaintiff,

        v.                                              OPINION & ORDER

JAMES THORPE, KATHRYN LOVELL,[1]                        15-cv-180-jdp
MICHAEL MEISNER, and KAREN ANDERSON,

                    Defendants.

Prisoner Shane Gressel is proceeding on claims that dentist James Thorpe, dental assistant Kathryn Lovell, health services unit manager Karen Anderson and warden Michael Meisner failed to provide Gressel appropriate dental care while he was incarcerated at the Columbia Correctional Institution, in violation of the Eighth Amendment. Three motions are before the court: (1) defendants' motion for summary judgment, Dkt. 20; (2) Gressel's "motion for leave to file affidavit instanter," Dkt. 34; and (3) defendants' motion to strike that affidavit, Dkt. 35.

The court will deny defendants' motion for summary judgment as it relates to Gressel's claims that Thorpe and Anderson needlessly delayed dental care. Gressel alleges that he was suffering from significant pain, bleeding, and other serious symptoms and that he complained to both Thorpe and Anderson about those symptoms. Anderson took no action on some of Gressel's complaints and Thorpe failed to schedule a prompt appointment or prescribe pain medication while Gressel waited for treatment. Because neither defendant explains the

---

[1] The court has amended the caption to reflect Lovell's full name as identified in the parties' summary judgment materials.

inaction, a reasonable jury could find that they were deliberately indifferent to a serious medical need.

The court will grant defendants' summary judgment motion as to all other claims and defendants. Although the treatment Thorpe eventually provided Gressel may not have resolved all of his symptoms, the undisputed evidence shows that Thorpe used sound medical judgment in deciding how to treat Gressel, which is all that the Eighth Amendment requires. Gressel's claims against the remaining defendants fail because he has not adduced evidence showing either that they were sufficiently aware of his condition to trigger a duty to act or that they had the expertise, authority, or ability to help him.

The court can resolve the other two motions summarily. Gressel asks for permission to file a new declaration, but the information in that declaration relates primarily to symptoms Gressel allegedly suffered as a result of not receiving proper dental care. That information is already part of the record and the little information that is new is not material to deciding defendants' summary judgment motion. Thus, although the declaration is late, the court will grant the motion because the court sees no unfair prejudice to defendants in allowing it and the court will deny defendants' motion to strike.

UNDISPUTED FACTS

Before setting out the undisputed facts, the court notes some problems with both sides' proposed findings of fact. First, Gressel objected to many if not most of defendants' proposed facts on improper grounds. For example, in response to a particular fact, Gressel often stated that he "object[ed]" or "disput[ed]" a fact "to the extent" that it "implie[d]" that Gressel received adequate care or that defendants acted appropriately, Dkt. 32, ¶¶ 6–13, 16–19, 21–

26, 34–37, 39, 41–45, 47, 50–51, 53, 55, 59–65, 67–68, 70, 75, 79, 84, 86–87, 94, 100, and 101–02, but he either did not cite any contrary evidence or he cited the same two allegations from his verified complaint, neither of which were responsive to most of the facts at issue. The court's procedures make it clear that a party may dispute a proposed fact either by "stat[ing] [his] version of the fact and cit[ing] evidence that supports that version" or by raising an evidentiary objection. Dkt. 15, at 12. A party may not simply object to what he believes the proposed fact "implies." The court disregarded any objections or disputes that did not comply with the court's procedures.

Second, many of defendants' proposed findings of fact rely on documentary evidence, such as medical records, grievances, and letters. But defendants consistently supported their proposed facts, not with citations to those documents, but with declarations in which the witness summarized the documents. Dkt. ¶¶ 27–28, 30, 32, 38, 41–44, 46, 52–53, 54, 66, 72-76, 78, 80–84, 88–89, and 95–99. This practice violates the best evidence rule and can lead to incomplete and even misleading proposed findings of fact. *Dugan v. R.J. Corman R. Co.*, 344 F.3d 662, 669 (7th Cir. 2003) ("The meaning of quoted phrases often depends critically on the unquoted context, and it is therefore a bad practice (and will often and here violate both the 'best evidence' rule of Fed. R. Evid. 1002 and the 'completeness' rule of Fed. R. Evid. 106) to present trial excerpts from a key document without introducing the document itself.").

Defendants submitted the relevant documents along with their summary judgment materials and the record in this case is relatively small, so the court was able to locate the appropriate documents without difficulty. But this court has admonished the Wisconsin Department of Justice about this issue in previous cases, *e.g.*, *Mathews v. Raemisch*, No. 10-cv-742, 2012 WL 12888031, at *2 (W.D. Wis. Feb. 23, 2012), *Wilson v. Greetan*, 571 F.

Supp. 2d 948, 952 (W.D. Wis. 2007), so it is not clear why the practice endures. The court reminds counsel that the court may disregard proposed findings of fact that are not properly supported. Because this is a recurring problem, counsel should forward a copy of this order to the Wisconsin Department of Justice's director of the civil litigation unit so that he can best determine how to stop the problem.

The following facts are undisputed unless otherwise noted.

## A. Parties

During the events relevant to this case, Shane Gressel was a prisoner at the Columbia Correctional Institution, which is in Portage, Wisconsin. James Thorpe was a dentist at the prison. Kathryn Lovell was Thorpe's dental assistant; her duties included preparing equipment for examinations, taking x-rays, scheduling appointments, and otherwise assisting Thorpe. She did not make decisions about patient care. Karen Anderson was the health services unit manager; she did not provide direct care to prisoners or schedule dental appointments and she did not have supervisory authority over dentists. Michael Meisner was the prison warden.

## B. Dental care practices

Dental staff at the Columbia prison see patients two days a week. (The parties do not explain why dental care is so limited.) If a prisoner in the Wisconsin Department of Corrections wants dental care, he may submit a dental service request. The dentist reviews the request and determines the treatment priority.

Thorpe places prisoners on a "routine wait list" if they request treatment for cavities, broken or cracked fillings, restorative care, cosmetic work, or conditions that will not result in a serious health risk if delayed. Thorpe places prisoners on an "essential wait list" if a delay in treatment "may result in advanced decay or non-restorable teeth." Dkt. 32, ¶ 12. Thorpe

considers infections, bleeding, continuous pain, and "traumatic" fractures to be conditions that require urgent or emergency care.

## C.  Gressel's dental care

On April 27, 2011, Gressel filed a dental service request in which he stated that a filling had fallen out of one of his teeth and it was "giving [him] a lot of pain." Dkt. 30-1. As a result, staff placed Gressel on the essential wait list and scheduled a "priority appointment." Dkt. 32, ¶ 15.

On May 9, 2011, Thorpe met with Gressel for the first time. Thorpe repaired the tooth with the lost filling and polished the edges of several chipped or uneven teeth.

On June 29, 2011, Gressel received a dental exam, a teeth cleaning, and a dental x-ray from "Dr. Giswold" and a hygienist. The records for this exam indicate that "a potential need for future dental work on teeth ##2, 5, and 14." Dkt. 32, ¶ 18. (Neither the records nor the parties explain the potential problems with those teeth.) The records also note a recommendation for a follow-up appointment in 12 months. Thorpe had no involvement in the June 29 appointment.[2]

In July 2012, Gressel submitted a dental service request in which he said that he had a cavity and two cracked fillings. He also complained that a molar was "giving [him] some pain,"

---

[2] In one of his proposed findings of fact, Gressel says that *Thorpe* examined him on June 29, Dkt. 33, ¶ 4, but the evidence he cites does not support the proposed fact. His verified complaint does not identify the staff involved at that appointment, Dkt. 17, ¶ 11, and the dental record he cites does not identify Thorpe as someone who provided treatment, Dkt. 30-3. Because Gressel cites no evidence to dispute defendants' proposed finding of facts that Giswold and Birkholz provided treatment on June 29 and that Thorpe was not involved in that appointment, Dkt. 32, ¶¶ 17, 22, the court has treated the fact as not genuinely disputed.

which he described as a "dull throb and ac[he]." Dkt. 25-1, at 10. Thorpe instructed Kathryn Lovell, his dental assistant, to add Gressel to the routine wait list.

In August 2012, Gressel submitted another dental service request, writing that he was in "dire need to have [his] teeth cleaned/fixed" because he had "constant headaches" as a result of fillings that had cracked more than a year earlier. Dkt. 25-1, at 11. Thorpe again placed Gressel on the routine wait list and added him to the "teeth cleaning list" because it had been more than a year since he had his teeth cleaned.

In September 2012, Gressel wrote to Anderson, the health services unit manager, about the failure of staff to provide dental care or eye care. As to his dental care, Gressel wrote that he had been waiting more than a year to receive treatment for a cavity and several cracked fillings. He complained about "serious pain" in his mouth and various other symptoms. Dkt. 24-1, at 1.

Anderson was out of the office, so a nurse responded to the letter. The nurse wrote that she had reviewed the schedule and confirmed that Gressel was on the waiting list. But cracked fillings and cavities were not considered to be a "dental emergency," so they are not addressed immediately. *Id.* at 3.

On September 28, 2012, Gressel submitted a grievance about his dental care in which he alleged that dental staff were refusing to treat his cavity and cracked fillings and that he was suffering from "serious pain" and bleeding. Dkt. 24-3. An examiner recommended dismissal, but forwarded the grievance to Anderson, who reviewed it. (Anderson does not say how or whether she responded to the grievance).

On October 7, 2012, Gressel submitted a dental service request in which he complained that he was in "constant pain" because of "headaches" from the "[h]oles in [his] teeth." *Id.* at 12. Thorpe again placed Gressel on the routine wait list.

On October 18, 2012, Gressel had an appointment with Thorpe. Lovell assisted Thorpe during the appointment, but she did not make any decisions about appropriate treatment. After examining Gressel's teeth and reviewing x-rays, Thorpe gave Gressel fillings in tooth #14 and tooth #20. He determined that tooth #2 and tooth #5 did not require dental work for the following reasons:

- he probed these teeth and determined that the depth of the gum tissue was not significant enough to require further treatment;

- he flossed the teeth to make sure there was dental contact between Gressel's teeth that was adequate to prevent food from getting stuck;

- he used his explorer to determine whether there were any "open margins," meaning that the tooth was smooth and "did not catch a crack;"

- he tapped the teeth for percussion to make sure the teeth were not causing Gressel pain that could be caused by an abscess; and

- he conducted a mobility test to make sure the teeth were not loose and did not move back and forth.

Dkt. 32, ¶ 37.

In November 2012, Gressel sent Anderson a second letter in which he complained that his "dental needs are still not being treated." Dkt. 24-2. He alleged that he was suffering from "extreme migraine headaches" when he ate anything hot or cold; his teeth hurt "for hours" when he ate anything solid; he lost "almost 60 pounds" because he stopped eating so many foods that aggravate his pain; and his gums bled when he brushed his teeth. Anderson "does not recall" how or whether she responded to the letter, Dkt. 24, ¶ 18, and defendants have submitted no evidence that she did.

Gressel submitted five more dental service requests in November 2012. In his November 6 request, he wrote that he was "still experiencing pain" from "cracked fillings," that his mouth "bleeds" when he brushes his teeth, that he gets "m[i]grains from the heat and cold," and that he has "a hard time eating." Dkt. 25-1, at 14. The copy of Gressel's November 11 request that defendants filed is nearly illegible, but it includes the allegation that Gressel's mouth is in "constant pain." *Id.* at 17. In his November 13 request, Gressel repeated his complaints that he gets headaches from "hot/cold," his mouth bleeds "all the time," and his "teeth hurt so bad [he] ha[s] a hard time eating." *Id.* at 18. In his November 27 request Gressel wrote that one of his fillings "partially came out" while he was eating. *Id.* at 19. He again complained about headaches and "constant pain." In his November 30 request, he wrote that he "lost a filling" and was "having constant pain in the lower left side of [his] mouth." *Id.* at 20. Whenever he drank anything hot or cold, he experienced "emence [immense] pain," leading to headaches and migraines. *Id.*

In response to the first four requests, Thorpe placed Gressel on the routine wait list after determining that "Gressel had no urgent future dental needs based on . . . Thorpe's examination and review of Gressel's October 2012 x-rays." Dkt. #32, ¶ 39. At that time, the routine waiting period was approximately eight to ten weeks. On December 5, 2012, after reviewing Gressel's November 30 request, Thorpe scheduled an appointment the following day.

During Gressel's appointment on December 6, 2012, Thorpe replaced a filling in tooth #19. Lovell assisted Thorpe. Gressel did not identify any other teeth that needed treatment at that time.

The same day, Gressel filed another grievance about his dental care. (The parties do not say whether he filed it before or after the dental appointment.) He wrote that a dental record

from 2006 states, "watch #5 may be cracked," and that a "previous dentist" had concluded that teeth #2 and #5 were "problematic," but he had not received treatment for those teeth. Dkt. 24-4, at 10. He repeated allegations about the symptoms he was experiencing, including "extreme migraine headaches."

The examiner asked Anderson and Thorpe to respond. After conferring with Thorpe, Anderson responded by stating that Thorpe had treated Gressel in October 2012 and that Thorpe had "determined from recent x-rays" that Gressel did not have an urgent need for care but that he was on the routine wait list. *Id.* at 2.

On December 12, 2012, Gressel filed another grievance. He alleged that he had an appointment on December 6 with "the orthodont[i]st," who "failed to even acknowledge . . . two existing problems" and that no one has "offered to give [him] anything for the pain." Dkt. 24-5, at 10–12. The examiner contacted Anderson, who stated that he is "on the list" for his two fillings. *Id.* at 24-5, at 2.

On December 16, 2012, Gressel submitted a dental service request. He wrote that one of his dental records from June 29, 2011 showed that "teeth number 2 and 5 had something wrong" and that "RDH Birkholz" told him that the teeth had cracked fillings that needed to be replaced. *Id.* He alleged that he still suffered from the following symptoms: "hot/cold sensitivity which causes pain which then [at] times turns into sever[e] m[i]grain headaches"; pain when he eats solid foods; "crack[ing]" and "pop[ping]" in his jaw when he chews; and bleeding gums. *Id.* He asked why he had not received an appointment for a teeth cleaning. On December 25, 2012, Gressel submitted a dental care request in which he again asked for a teeth cleaning.

In response to the December 16 request, Thorpe placed Gressel on the routine wait list "[b]ecause Gressel was requesting dental work on cracked fillings." Dkt. 32, ¶ 53. In response to both requests, Thorpe placed Gressel on the teeth cleaning list. (The parties do not say what happened to the August 2012 request for a teeth cleaning.)

On December 29, 2012, Gressel sent a letter to Meisner, the warden, in which Gressel complained about changes made to the inmate handbook regarding dental care. In particular, Gressel stated that he disagreed with the conclusion that cracked fillings, decayed teeth, and bleeding gums are not considered urgent needs. After citing various judicial decisions, he concluded with the statement that "it's now been 8 months since my dental issue ha[s] been documented and ha[s] not been addressed fully." Dkt. 23-1, at 3. In response, Meisner wrote that the inmate handbook provides "general guidelines," but that "each situation is unique" and "will be evaluated as appropriate by" dental staff. *Id.* at 1. He directed Gressel to raise any additional concerns with Anderson.

On January 3, 2013, Gressel was transferred to a different facility, before receiving any additional dental care at the Columbia prison.

ANALYSIS

**A. Legal standard**

Gressel's claim is that each of the defendants violated his rights under the Eighth Amendment by failing to give him needed dental care in 2011 and 2012. In the medical context, the question under the Eighth Amendment is whether the defendant was "deliberately indifferent" to a "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104 05 (1976). This standard can be translated into three elements:

> (1) Did the plaintiff need medical treatment?
>
> (2) Did the defendants know that the plaintiff needed treatment?
>
> (3) Despite their awareness of the need, did the defendants consciously fail to take reasonable measures to provide the necessary treatment?

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). On a motion for summary judgment, it is the plaintiff's burden to adduce evidence from which a reasonable jury could find in his favor on each of these elements. *Henderson v. Sheahan*, 196 F.3d 839, 848 (7th Cir. 1999). The court will consider first whether a reasonable jury could find that Gressel had a serious medical need and then consider whether each defendant was deliberately indifferent.

**B. Serious medical need**

This element does not require extended discussion. The Seventh Circuit has stated that "dental care is one of the most important medical needs of inmates," *Board v. Farnham*, 394 F.3d 469, 480 (7th Cir. 2005), and that dental problems such as tooth decay, tooth pain, and bleeding gums can be sufficiently serious to implicate the Eighth Amendment, *Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 939 (7th Cir. 2015) ("A dentist demonstrates deliberate indifference by . . . prolonging the patient's pain, while knowing that the patient may well be in serious pain that is treatable."); *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) ("Tooth decay can constitute an objectively serious medical condition because of pain and the risk of infection."); *Board*, 394 F.3d at 480 (stating that "dental pain accompanied by various degrees of attenuated medical harm may constitute an objectively serious medical need," citing cases involving "recession or bleeding of the gums," "deterioration of teeth due to lack of treatment," "interference with the ability to eat," and the "deprivation of toothpaste resulting in bleeding gums and tooth decay"). In at least one recent case, the defendants simply conceded that "tooth

decay and the pain it caused constituted serious medical conditions." *Smego v. Mitchell*, 723 F.3d 752, 756 (7th Cir. 2013). Because Gressel alleges the type of symptoms recognized as sufficiently serious in these cases, defendants are not entitled to summary judgment on the question whether Gressel had a serious medical need.

Nevertheless, defendants resist this conclusion, relying on the unpublished decision in *Greene v. Pollard*, 335 F. App'x 612, 614 (7th Cir. 2009), for the proposition that "periodic and regular dental pain and difficulty using . . . teeth to eat" are not serious medical needs. But Gressel has alleged that he suffered from more than just a bit of pain and difficulty eating. He submitted numerous letters, grievances, and other requests for treatment in which he alleged that he was in "constant," "serious," or "immense" pain, that he suffered from "constant headaches" and "extreme migraine headaches," that his teeth hurt "for hours" when he ate anything solid; that his mouth bled whenever he brushed his teeth, and that he had lost weight from not eating.

The court of appeals has held in many cases that prolonged pain is a serious medical need. *E.g.*, *Smith v. Knox Cty. Jail*, 666 F.3d 1037, 1039–40 (7th Cir. 2012) ("[D]eliberate indifference to prolonged, unnecessary pain can itself be the basis for an Eighth Amendment claim."); *Gonzalez v. Feinerman*, 663 F.3d 311, 314 (7th Cir. 2011) ("[C]hronic pain presents a[n] objectively serious condition."); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 830 (7th Cir. 2009) ("[D]elays in treating non-life-threatening but painful conditions constitute a failure to address a serious medical need."). Thus, even if *Greene* could be construed as supporting defendants' argument, a nonprecedential opinion is not dispositive when so much controlling authority so clearly supports Gressel.

**C. Deliberate indifference**

**1. James Thorpe**

Gressel does not clearly identify everything he believes that Thorpe did that violated the Eighth Amendment, but from a review of the briefs and the record, the court understands Gressel to be bringing two types of claims. First, Gressel says that Thorpe unnecessarily delayed his care when he complained to Thorpe about his pain and other symptoms. Second, he says that Thorpe provided inadequate care at his appointments. The court will address both types of claims in turn.

**a. Delay**

It is well established that an unnecessary delay in treating a painful medical condition can violate the Eighth Amendment. *Berry*, 604 F.3d at 441 ("A significant delay in effective medical treatment also may support a claim of deliberate indifference, especially where the result is prolonged and unnecessary pain."). "[T]he length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).

In this case, there are three points of time relevant to the question whether Thorpe acted with deliberate indifference by failing to act more promptly on Gressel's requests for dental care: (1) before Gressel's October 18, 2012, appointment with Thorpe; (2) before Gressel's December 6, 2012, appointment with Thorpe; and (3) before Gressel was transferred to a different facility on January 3, 2013. The court does not understand Gressel to be contending that there was an undue delay before Thorpe examined him in May 2011. Gressel does not discuss that appointment in his complaint or any of his summary judgment materials.

As to the three periods of delays identified above, a reasonable jury could find that Thorpe was aware that Gressel had a serious medical need and consciously refused to take reasonable steps to provide treatment. Thorpe's responses to Gressel's requests for dental care during those times raise two questions that Thorpe does not adequately answer: (1) why did Thorpe place Gressel on a waiting list for "routine" procedures rather than giving Gressel priority? and (2) why did Thorpe fail to take any steps to alleviate Gressel's pain while he waited for care?

As to the first question, Thorpe says that Gressel was asking for treatment for cracked fillings, which is not an urgent need. But that explanation simply ignores Gressel's consistent complaint starting in August 2012 that he was experiencing serious and constant pain in both his mouth and head, as well Gressel's allegations that his mouth was bleeding and he was having great difficulty eating. Under his own stated standard of care, Thorpe considers "bleeding" and "continuous pain" to be conditions that require urgent or emergency care. Dkt. 25, ¶ 13. He does not even try to reconcile his actions with that standard. He also does not try to explain why he did not prescribe Gressel any pain medication while he was waiting for treatment. It is as if Thorpe was simply skipping over the parts of Gressel's requests that describe his constant pain.

Again, delaying treatment for pain can rise to the level of an Eighth Amendment violation. *Berry*, 604 F.3d at 441. Although the delays in this case were weeks or months rather than years, shorter term delays may violate the Eighth Amendment when the pain is significant and there is no adequate justification for failing to treat it. *McGowan*, 612 F.3d at 640–41 ("unexplained" three-month delay "to see a dentist after . . . complain[ing] of dental pain . . . could support a deliberate-indifference claim if [the dentist] was aware of the severity of [the

prisoner's] dental problems yet refused to approve a dental visit"); *Berry*, 604 F.3d at 442 (nearly two-month delay to see dentist could violate Eighth Amendment when prisoner "was forced to endure . . . serious pain despite the availability of an obvious treatment—a simple dentist visit—that [the prisoner] had specifically requested numerous times" and "[t]he only apparent reason for that delay was that he had the misfortune of being transferred to a jail without an on-site dentist").

Defendants rely on *Collins Bey v. Haines*, No. 13-cv-618, 2016 WL 5718251 (W.D. Wis. Sept. 30, 2016), to support their contention that the delay in "in treatment of Gressel's tooth pain is not unreasonable and does not rise to the level of deliberate indifference." Dkt. 21, at 22-23. But *Collins Bey* does not stand for the general proposition that delays in providing dental care do not violate the Eighth Amendment. Like this case, *Collins Bey* involved claims that dental care staff delayed a prisoner's care, but unlike this case, the defendants in *Collins Bey* adduced substantial evidence that the delays were unavoidable and caused by staffing shortages. 2016 WL 5718251, at *6–7. Here, Thorpe does not allege he was unable to see Gressel because of the demands of other patients. Rather, Thorpe says that he delayed Gressel's care because there was no urgent need. And even if the delay in examining Gressel were justified, that would not provide grounds for denying Gressel any means of pain relief.

Alternatively, defendants raise a qualified immunity defense, but they do not develop an argument to support it. After providing an overview of the law, they say only that Gressel cannot show that they violated his clearly established rights, "[f]or the reasons stated [earlier in their brief], and as the case law cited [earlier in the brief] makes clear." Dkt. 21, at 33. This is not persuasive. In cases involving a straightforward application of the test for deliberate indifference, the court of appeals has been reluctant to find that qualified immunity should

apply. *E.g.*, *Estate of Clark v. Walker*, 865 F.3d 544, 552–53 (7th Cir. 2017); *Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984, 991 (7th Cir. 2012); *Board*, 394 F.3d at 481. This is because the merits and qualified immunity analyses may

> effectively collapse into one. . . . [A] plaintiff claiming an Eighth Amendment violation must show the defendant's actual knowledge of the threat to the plaintiff's health or safety, the defendant's failure to take reasonable measures, and the defendant's subjective intent to harm or deliberate indifference. If there are genuine issues of fact concerning those elements, a defendant may not avoid trial on the grounds of qualified immunity.

*Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) (citations omitted). In this case, it has been established for decades that both pain generally and dental pain in particular are serious medical needs and that and that needless delays in treating that pain can violate the Eighth Amendment. Accordingly, Thorpe is not entitled to summary judgment on this claim.

### b. Treatment provided at appointments

Thorpe examined Gressel three times, in May 2011, October 2012, and December 2012. Gressel says that Thorpe examined him in June 2011 as well, but as discussed in the undisputed facts section, Gressel has no evidence to support that allegation, not even his own declaration. And because Gressel does not identify any problems with the May 2011 examination, the court will limit its analysis to the October 2012 and December 2012 appointments.

Gressel does not deny that Thorpe provided a significant amount of care at both appointments. At the October 2012 appointment, Thorpe gave Gressel two fillings and took x-rays; at the December 2012 appointment, Thorpe replaced another filling.

Gressel's criticism of Thorpe's treatment seems to be that Thorpe did not repair or replace fillings in tooth #2 or #5. But Thorpe explained in detail why he did not perform any

16

work on those teeth, *see infra*, at 7, and a court will ordinarily defer to a healthcare provider's medical judgment, unless it is "blatantly inappropriate" or "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *King v. Kramer*, 680 F.3d 1013, 1018–19 (7th Cir. 2012) (internal quotations omitted). In this case, Gressel does not identify any deficiencies with Thorpe's examination or his reasoning for not doing more, so there is no basis for inferring that Thorpe did not use medical judgment.

Gressel cites two pieces of evidence to support a contrary conclusion, but they do not provide adequate support for his position. First, in a dental record from 2006, there is a note, "watch #5 may be cracked." Second, in a chart from the June 2011 examination, there are circular markings next to a diagram of teeth #2 and #5.

These records cannot carry the day for Gressel for multiple reasons. First, both records are ambiguous and neither provides any context or foundation for the conclusion of the person who prepared the record. Without testimony from that person or persons, it would be unreasonable to draw the inference that either record shows that tooth #2 or #5 actually required treatment.[3] The most that one could reasonably infer from the documents is that one or both teeth needed to be monitored for future problems. That is far from sufficient to show that Gressel's treatment was "blatantly inappropriate," particularly in light of Thorpe's unrebutted explanation of his treatment decisions.

---

[3] Thorpe says that the markings on the June 2011 record show that teeth #2 and #5 "potential[ly]" needed dental work. Although Thorpe does not provide any foundation for that conclusion, Gressel did not object to the testimony on that ground or cite any contrary evidence. Dkt. 32, ¶ 18.

It is not clear whether Gressel also means to challenge Thorpe's failure to give him a teeth cleaning. If he does, the claim fails. Although Thorpe does not justify the failure, Gressel does not cite any evidence showing that he was harmed or even subjected to a substantial risk of serious harm as a result of not receiving the cleaning.

### 2. Kathryn Lovell

Lovell's only involvement in this case is that she assisted Thorpe during the October 2012 and December 2012 examinations and she complied with Thorpe's directive to place Gressel on the routine wait list in July 2012. Gressel says nothing about Lovell placing him on the routine wait list, so the court will not consider a claim based on that action.

That leaves Lovell's assistance during the examinations. Gressel says in his brief that Lovell can be held liable because "he informed [her] of his dental needs face-to-face during a dental appointment. Verified Complaint ¶ 23. But she did nothing to address Gressel's issue, nor did she [convey to] Thorpe the need to address the issue. Verified Complaint ¶ 26." Dkt. 28, at 9. Gressel did not include these or any other allegations about Lovell in his proposed findings of fact, but even if he had, they are not sufficient to defeat defendants' motion for summary judgment as to Lovell.

Regardless what Gressel told Lovell, it is undisputed that Lovell was not qualified or authorized to make decisions about patient care. Gressel suggests that Lovell should have "impart[ed] upon Thorpe the need to address the issue," but Gressel has failed to adduce evidence showing that Thorpe's treatment during the appointments may have violated the Eighth Amendment, so Lovell cannot be held liable for failing to intervene in Thorpe's treatment decisions.

### 3. Karen Anderson

There is no dispute that Anderson, the health services unit manager, was aware of Gressel's dental concerns. Although she was out of the office when Gressel sent his first letter to her in September 2012, she admits that she reviewed documents in which Gressel described in detail his symptoms and lack of treatment for them, including a September 2012 grievance, a November 2012 letter and two December 2012 grievances.[4] It also appears that Anderson took no action on at least some of these complaints. For example, defendants admit that there is no evidence that Anderson responded to the November 2012 letter and they are silent as to whether she responded to the September 2012 grievance.

Again, because Gressel failed to show that that Thorpe provided constitutionally inadequate treatment during his appointments, the court need not consider whether Anderson could have done more to improve that treatment. The question is whether she shares responsibility for the delay in providing treatment.

Anderson says that there was nothing that she could have done because she is not responsible for providing medical care to prisoners, she has no authority over dentists, and she does not schedule dental appointments. But the court of appeals has rejected similar arguments. *Dobbey*, 806 F.3d at 941 ("If a prisoner is writhing in agony, the guard cannot ignore him on the ground of not being a doctor; he has to make an effort to find a doctor, or in this case a dentist, or a technician, or a pharmacist—some medical professional."); *Smego*, 723 F.3d at 758 ("[E]ven non-medical personnel cannot stand by and ignore a detainee's complaints of serious

---

[4] It is not clear whether Anderson reviewed Gressel's second December 2012 grievance before he was transferred out of the Columbia facility. The grievance record describing the examiner's consultation with Anderson is dated January 24, 2013, several weeks after Gressel's transfer. Dkt. 24-5, at 2.

medical issues."). Even a person with limited authority can at least bring the problem to the attention of the relevant decision maker or a supervisor, *Smego*, 723 F.3d at 757; *Berry*, 604 F.3d at 443, which Anderson did not do until December 2012. As this court noted in *Key v. Mashak*, No. 15-cv-673, 2017 WL 2869954, at *7 (W.D. Wis. July 5, 2017), it would make little sense for grievance examiners to consult with the health care services unit manager, as the examiners did in this case, if the health care manager had no authority to take any action.

It is possible that Anderson would not have changed the outcome if she had attempted to intervene on Gressel's behalf. After all, Thorpe was already aware of Gressel's complaints, and, when she did discuss the matter with Thorpe in December 2012, nothing changed. But Gressel has raised enough doubt to raise a genuine issue of material fact, so the jury will have to resolve that issue.

### 4. Michael Meisner

Meisner was the prison warden. Gressel does not claim that Meisner should be held liable for adopting an unconstitutional policy or failing to ensure that the prison had adequate staffing and resources to address the prisoners' dental care needs. Rather, Gressel's sole basis for his claim against Meisner is the letter that Gressel sent him on December 29, 2012. Gressel does not allege that Meisner had any knowledge of the situation before then.

Gressel was transferred out of the Columbia prison on January 3, 2013, so it is unlikely that Meisner could have investigated Gressel's concerns and arranged for treatment before the transfer. In any event, the letter Gressel sent Meisner was not sufficient to give Meisner notice that Gressel had a serious medical need. Most of the letter is a complaint about language in the inmate handbook, which is not at issue in this case. At the end of the letter, Gressel referred generally to an unspecified "dental issue" that had "not been addressed fully," but Gressel did

not identify what the issue was or who was responsible and he did not ask Meisner to do anything about it. Under these circumstances, no reasonable jury could find that Meisner was actually aware that Gressel had a serious medical need or that he acted unreasonably. *Gevas v. McLaughlin*, 798 F.3d 475, 480–81 (7th Cir. 2015) ("Complaints that convey only a generalized, vague, or stale concern about one's safety typically will not support an inference that a prison official had actual knowledge that the prisoner was in danger.").

## D. Injunctive relief

In his complaint, Gressel asks for an order "compelling Defendants to provide Gressel with timely dental care." Dkt. 17, ¶ 44(a). Defendants say that they have "sovereign immunity" from any claim for injunctive relief, but only because they say that they did not violate Gressel's rights. Gressel does not address this issue in his opposition brief.

The court is allowing Gressel to proceed to trial against Thorpe and Anderson, so the court could not deny injunctive relief against those two defendants on the ground that defendants raise. But Gressel was transferred more than four years ago and neither side says anything about Gressel's need for dental care now or Thorpe's and Anderson's ability to provide that care. In fact, Gressel alleges that he received "adequate treatment" after he was transferred. Dkt. 33, ¶ 10. Because the parties do not address the issue, the court will not decide it now, but if Gressel prevails on his claim against Thorpe and intends to request injunctive relief, he will have to show both that he has standing to obtain that relief and that he is otherwise entitled to an injunction.

ORDER

IT IS ORDERED that:

1. The motion for summary judgment filed by defendants James Thorpe, Kathryn Lovell, Karen Anderson, and Michael Meisner, dkt. 20, is DENIED as to plaintiff Shane Gressel's claim that Thorpe and Anderson delayed needed treatment for Gressel's dental problems, in violation of the Eighth Amendment. Defendants' motion is GRANTED as to all other claims and Gressel's second amended complaint is DISMISSED as to defendants Lovell and Meisner.

2. Gressel's motion to file an untimely affidavit, Dkt. 34, is GRANTED and defendants' motion to strike that affidavit, Dkt. 35, is DENIED.

Entered September 18, 2017.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge